No. 21-1073

In the
United States Court of Appeals
for the Seventh Circuit

DUSTIN JOHN HIGGS,
Petitioner-Appellant,
v.

T.J. WATSON, WARDEN,
Respondent-Appellee.

On Appeal from the United States District Court
for the Southern District of Indiana, Terre Haute Division
No. 2:20-cv-00665-JPH-DLP — Hon. James P. Hanlon, *Judge.*

## UNITED STATES RESPONSE IN OPPOSITION TO APPELLANT'S MOTION TO STAY EXECUTION

JOHN CHILDRESS
Acting United States Attorney
Southern District of Indiana

Jeffrey A. Hall
Counsel to the Assistant
    Attorney General
Civil Division
Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
(202) 353-8679

Ellen E. Nazmy
Special Assistant United States
    Attorney
6500 Cherrywood Lane, Suite 200
Greenbelt, Maryland 20770
(301) 344-4433

January 15, 2020                    *Attorneys for the Appellee*

**INTRODUCTION**

Nearly 25 years ago, Higgs ordered the cold-blooded murder of three women on federal land near the Baltimore-Washington Parkway. He was convicted of multiple first-degree murder and kidnapping charges, resulting in nine death sentences. His convictions and sentences have been upheld through exhaustive challenges on direct appeal, post-conviction proceedings under 28 U.S.C. § 2255, and multiple rounds of habeas filings under 28 U.S.C. § 2241.

Now, just hours before his execution, he seeks exactly the sort of "[l]ast-minute stay[]" that the Supreme Court has cautioned "should be the extreme exception, not the norm[.]" *Bucklew v. Precythe*, 139 S. Ct. 1112, 1134 (2019). There is no reasonable explanation for the tardiness of his request. As he acknowledges, he has had the supposedly "new" evidence on which he relies for *eight years*. If his claim had merit and was cognizable under § 2241, nothing would have prevented him from filing the same petition years ago. But instead, he waited until December 2020—only weeks before his scheduled execution—to seek habeas relief. This Court should not reward such gamesmanship.

Even if one could ignore Higgs's strategic delay, he also has no case for a stay on the merits. Congress has provided § 2255 as the mechanism through which federal prisoners are to assert claims like his. Indeed, Higgs brought such a motion based on *Brady v. Maryland*, 373 U.S. 83 (1963)—it was just not successful. In particular, the court deciding his petition determined that even if Higgs had the very evidence he now claims he has acquired, it would not make any difference to his *Brady* claim. Higgs's repeated misstatements about the record do not change that.

Section 2255(e) prevents Higgs from circumventing that unfavorable result by relitigating the same claims under § 2241. While a narrow exception exists for cases in which a § 2255 petition is "inadequate or ineffective" to test a prisoner's claim, that "savings clause" is inapplicable here. Even apart from the § 2255 court addressing the materiality of just the sort of evidence Higgs now relies on, § 2255 is also adequate and effective more generally to address *Brady* claims, including *Brady* claims based on newly discovered evidence. As Higgs acknowledges, if his evidence were stronger, he could have filed another petition under § 2255(h)(1). But that does not—contrary to his

argument—mean that a motion under § 2255 is inadequate or ineffective; it simply means that Higgs is not entitled to relief under the system of post-conviction review that Congress adopted. For that reason, too, his motion should be denied.

## BACKGROUND

### *Higgs's Triple Murder*

On January 26, 1996, Dustin Higgs arranged a triple date that became a triple murder. *United States v. Higgs*, 353 F.3d 281, 289 (4th Cir. 2003). Higgs, along with Willis Mark Haynes and Victor Gloria, drove from Higgs's apartment in Maryland to Washington, D.C. to pick up Tanji Jackson, Tamika Black, and Mishann Chinn. *Id*. After returning to Higgs's apartment, Higgs and Jackson got into an argument and the three women left. *Id*. at 289-90. After seeing Jackson write down his license plate number, Higgs told Haynes and Gloria that Jackson was "writing down [his] s***," and then said "f*** that," "come on," and grabbed his coat. *Id*. He retrieved a .38 caliber pistol and put it in his pocket. *Id*. The three men drove in Higgs's vehicle to where the women were walking and persuaded the women to get into the van with a

3

promise of a ride home. *Id.* During the drive, Higgs and Haynes leaned towards each other and engaged in a hushed conversation. *Id.*

Instead of driving the women home, Higgs drove into the Patuxent National Wildlife Refuge and pulled over at a secluded location. *Id.* One woman asked if Higgs was going to "make [them] walk from [t]here," and he responded, "something like that." *Id.* After the women got out of the van, Higgs handed his pistol to Haynes. *Id.* As Higgs watched in the rearview mirror, Haynes shot Jackson and Black in the chest and Chinn in the back of the head, killing all three. *Id.* at 290-91.

Higgs drove to the Anacostia River, where they disposed of the gun. *Id.* They returned to Higgs's apartment and cleaned: wiping down doors and "everything else, the bathroom, the doorknobs, the stereo" and throwing away items the women might have touched. *Id.*

### Higgs's Nine Death Sentences

In 1998, Higgs and Haynes were indicted on three counts each of first-degree premeditated murder under 18 U.S.C. § 1111(a), first-degree murder committed in the preparation or attempted preparation of kidnapping under § 1111(a), kidnapping resulting in death under § 1201(a), and using a firearm in the commission of a crime of violence

4

under § 924(c).  *Higgs*, 353 F.3d at 294.  The government filed notice of its intent to seek a death sentence.  *Id.*

On October 11, 2000, a jury found Higgs guilty as charged.  *Id.*  At the penalty phase, the jury returned a sentence of death for each of the murder and kidnapping counts.  *Higgs*, 353 F.3d at 294.  The district court imposed nine death sentences.  *Id.* at 295.

Higgs appealed, raising twenty separate claims.  *Id.*  The Fourth Circuit affirmed in a published opinion.  *Id.* at 334.  The Supreme Court denied Higgs's subsequent petition for writ of certiorari.  *Higgs v. United States*, 543 U.S. 999 (2004).

### *Post-Conviction Motions*

Following his unsuccessful direct appeal, Higgs filed a motion for a new trial in the District of Maryland, which was denied and affirmed on appeal.  *See United States v. Higgs*, 95 F. App'x 37 (4th Cir. 2004).

In November 2005, Higgs filed his first petition under 28 U.S.C. § 2255, asserting twenty-five claims of error and requesting an evidentiary hearing.  *Higgs v. United States*, 711 F. Supp. 2d 479 (D. Md. 2010).  One, a claim under *Brady v. Maryland*, 373 U.S. 83 (1963), alleged that the government had offered eyewitness Victor Gloria undisclosed "benefits in

relation to state charges pending against him in Virginia as well as charges he potentially faced in Baltimore"—specifically "that state charges were never brought against Gloria for a homicide in Baltimore." *Id.* at 508. The Court rejected this claim. As an initial matter, the court concluded that the "causal connection between Gloria's testimony in this federal case and whatever treatment he may have received in the state jurisdictions" was "speculation." 711 F. Supp. 2d at 508. The court then when on to hold that even if "the prosecution failed to turn over any of this evidence," and "assuming the factual accuracy of the supposed benefits, Higgs has not demonstrated its materiality." *Id.*

The court addressed the materiality issue at length. It explained that "the jury knew Gloria faced 15 years in prison for his involvement in the present case, plus 30 years on other federal drug charges and up to 10 years on State drug charges," and "also knew that the Government had offered Gloria a lighter sentence for his role in this case in exchange for his cooperation." *Id.* at 507-508. Moreover, "Gloria's credibility as a witness was thoroughly explored and impugned . . . through vigorous cross-examination," during which "Gloria openly confessed to an extensive criminal history" and "state[d] that 'if it is going to help Victor

6

Gloria, Victor Gloria will do whatever he has to do.'" *Id.* at 508. Given all of that existing evidence that "Gloria was a witness of dubious reliability, whose testimony the jury could weigh accordingly," the court determined that "any evidence that Gloria may have received consideration for his testimony beyond that disclosed by the Government could not have further undermined his already low credibility, nor would it have created a 'reasonable probability' of a more favorable verdict." *Id.* at 508-509 (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)).

The court also denied Higgs's request for an evidentiary hearing, finding that "most of Higgs' claims 'suffer from some procedural flaw that should prove fatal' and those that survive procedural challenge do not allege any facts which are 'either potentially credible or, if taken as true, would merit relief.'" *Id.* at 553.

The Fourth Circuit granted a certificate of appealability only on a claim regarding lead bullet analysis, and affirmed the district court's decision, citing *inter alia* "overwhelming evidence of Higgs's role in the murders." *United States v. Higgs*, 663 F.3d 726, 742 (4th Cir. 2011). The Supreme Court denied Higgs's petition for a writ of certiorari. *Higgs v. United States*, 133 S. Ct. 787 (2012).

In December 2014, Higgs filed a Motion for Relief from Final Judgment under Federal Rule of Civil Procedure 60(d) ("Rule 60 Motion"), asking the district court to set aside the denial of his § 2255 motion based on newly discovered evidence. He alleged that in "the spring of 2012" his attorneys had obtained "evidence from a police file that he says proves the U.S. Government committed fraud on the Court during the § 2255 proceedings." *United States v. Higgs*, 193 F. Supp. 3d 495, 496, 499 (D. Md. 2016). The new evidence Higgs relied on was a series of handwritten notes from the police file showing that Gloria was a suspect in the 1998 killing of Martrelle Creighton, who was stabbed during a fight in the Baltimore Inner Harbor. *Id*. at 499-505.

After a careful review of the evidence, the district court determined that Higgs had "failed to establish even colorable fraud on the court." *Id.* at 497. Higgs had argued that the notes showed "that Baltimore authorities decided not to charge Gloria at the behest of the federal prosecutors," but the court drew a very different conclusion: "it is far more likely . . . that throughout its investigation the [police] suspected [another man], not Gloria, was [the] killer, and . . . ultimately chose not to prosecute Gloria because of the lack of evidence that he was involved,

8

especially in the face of strong evidence pointing to [the other man]." *Id.* at 510. For example, even before the Baltimore police had discussed the case with a federal prosecutor, "three eyewitnesses with no obvious motive to lie to police independently identified [the other man] as the likely murderer (two doing so by name), and all three suggested Gloria was not even involved in the altercation." *Id.*; *see id.* at 510-13 (cataloguing extensive additional evidence that Gloria was not the murderer). The district court also emphasized the continued validity of its previous finding that any evidence "*could not have further undermined his already low credibility, nor would it have created a 'reasonable probability' of a more favorable verdict.*" *Id.* (emphasis in original) (citation omitted). Higgs appealed to the Fourth Circuit, which denied a certificate of appealability and dismissed the appeal. *United States v. Higgs*, Case No. 16-15 (4th Cir.).

In 2016, Higgs filed a petition for a writ of habeas corpus under § 2241 in the Southern District of Indiana, asserting that his convictions under § 924(c) were invalid on void-for-vagueness grounds. The district court eventually denied his habeas petition, and this Court affirmed earlier this week. *See Higgs v. Watson*, No. 20-2129, 2021 WL 81380, at

*1 (7th Cir. Jan. 11, 2021).[1] At no point in those first habeas proceedings did Higgs assert the *Brady* claim on which his current application for a stay rests.

On December 14, 2020, Higgs filed a *pro se* § 2241 petition—his second —in the instant case. D. 1.[2] On December 23, Higgs filed through counsel a motion requesting leave to file an amended § 2241 petition. D. 14. Higgs raised two claims: 1) that the government suppressed evidence before trial in violation of *Brady*, and 2) that his indictment was deficient under the Fifth Amendment and failed to charge a capital offense. *Id.* Higgs also filed through counsel a Motion for Stay of Execution. D. 15.

On January 12, 2021, the district court denied Higgs's motion to stay his execution, finding he had failed to show that his claims were likely to succeed under the § 2255(e) savings clause. D. 21. The district court explained with respect to the first claim that "§ 2255(h) already provides petitioners an avenue for collateral relief based on newly discovered evidence" and therefore "Higgs has not made a strong showing

---

[1]  Higgs also filed two applications with the Fourth Circuit to file successive § 2255 motions asserting the same claim; both applications were denied.

[2]  "D." refers to the electronic docket numbers in the case below, No. 2:20-cv-00665 (S.D. Ind.).

that he may raise his *Brady* claim in a § 2241 petition." *Id.* at 8. The district court also observed that "[t]he timing of this petition weighs against Mr. Higgs," noting that "[h]e failed to bring his *Brady . . .* claims earlier, even though nearly all of the *Brady* evidence was in his possession in 2012." *Id.* at 11.

### DISCUSSION

A stay of execution "is an equitable remedy" and "is not available as a matter of right." *Hill v. McDonough*, 547 U.S. 573, 584 (2006). A defendant seeking a stay of execution "must satisfy all of the requirements for a stay." *Id.* Specifically, he must demonstrate that: (1) he has a significant likelihood of success on the merits in the pending proceedings; (2) he will suffer irreparable harm if a stay is not granted; and (3) the balance of equities weighs in favor of a stay. *Lambert v. Buss*, 498 F.3d 446, 447 (7th Cir. 2007).

The applicant must show that he has a strong likelihood of succeeding on the merits—a court may not grant a stay based on a "significant possibility" of success or a finding "that evaluating [the defendant]'s arguments will take more time." *Lee v. Watson*, No. 19-3399, 2019 WL 6718924, at *1 (7th Cir. Dec. 6, 2019) (quoting *Nken v. Holder*,

556 U.S. 418, 434 (2009)).  Irreparable injury is generally taken as a given in capital cases, but it is "not itself enough" to justify a stay.  *Id.* at *1. On the balance of equities, because the government has a "significant interest in enforcing its criminal judgments, there is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay."  *Nelson v. Campbell*, 541 U.S. 637, 649-50 (2004).

The Supreme Court's relevant decisions thus "emphasize two critical factors:  (1) whether the inmate has delayed unnecessarily in bringing the claim; and (2) whether the inmate shows a significant probability of success on the merits."  *Lambert*, 498 F.3d at 451.

## I. Higgs Cannot Establish Any Likelihood of Success on the Merits, Much Less that Necessary to Warrant a Stay

Higgs seeks a stay based on his asserted likelihood of success on his *Brady* claim.  Appellant's Emergency Mot. to Stay Execution ("Mot.).  But his claim has already been fully litigated on the merits in a previous 28 U.S.C. § 2255 petition, and this completely bars it from being relitigated through his § 2241 petition.  And even if there were something new about his petition, he could not pursue it under § 2241 because Congress has

already created a path for claims based on newly discovered evidence—his claim is simply too poor on the merits to satisfy the standard Congress established.

### A. Higgs Must Demonstrate Structural Problems with § 2255 that Preclude Him From Ever Raising His Claim

Generally, "a federal prisoner wishing to collaterally attack his conviction or sentence must do so under § 2255." *Chazen v. Marske*, 938 F.3d 851, 856 (7th Cir. 2019). That section functions as a "substitute for the writ of habeas corpus [under 28 U.S.C. § 2241] that it largely replaced." *Webster v. Daniels*, 784 F.3d 1123, 1124 (7th Cir. 2015) (en banc). Section 2255, however, also contains a "savings clause" that "provides a narrow pathway" to file a claim under § 2241 challenging the legality of a prisoner's conviction or sentence. *Purkey v. United States*, 964 F.3d 603, 611 (7th Cir. 2020). A prisoner can only use § 2241 if "the remedy by [a § 2255] motion is inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). Under this Court's cases, there must "be some kind of structural problem with section 2255 before section 2241 becomes available"—"something more than a lack of success with a section 2255 motion." *Webster*, 784 F.3d at 1136. Such structural problem must "foreclose[] even one round of effective collateral review."

*Taylor*, 314 F.3d at 835; *Chazen*, 938 F.3d at 856 (citing *In re Davenport*, 147 F.3d 605, 609 (7th Cir. 1998)); *Montana v. Cross*, 829 F.3d 775, 783 (7th Cir. 2016).  Importantly, § 2255 is not inadequate or ineffective simply because a prisoner may be barred from filing a second § 2255 motion.  "To hold otherwise . . . would be to nullify the limitations on successive petitions," such that "the careful structure Congress has created to avoid repetitive filings would mean little or nothing."  *Garza v. Lappin*, 253 F.3d 918, 921-22 (7th Cir. 2001).

**B.     Higgs's Claim Has Already Been Litigated on the Merits and He Is Not Entitled to Revisit It through § 2241**

Higgs seeks to proceed directly to consideration of whether some path under the savings clause of § 2255 applies or can be created to allow him to bring his *Brady* claim.  It is unnecessary, however, for this Court to even consider those paths.  The very claim that Higgs brings here has already been squarely and wholly decided in prior litigation.  Although he asserts that there has been a change, an analysis of his claim shows that there has actually been none.

Even before § 2255 was adopted to curtail litigation, a petitioner could not simply bring the same claim again under § 2241 without

14

demonstrating that some change had occurred, and § 2255 cannot be read to allow relitigation of the very same claim. *See Roundtree v. Krueger*, 910 F.3d 312, 314 (7th Cir. 2018). Because "[t]he claim [Higgs] now wants to present was presented before," "under § 2244(b) it *must* be dismissed." *Taylor*, 314 F.3d at 836 (emphasis in original). Higgs's claim could have been (and was) fully litigated on the merits in a previous petition, so there is necessarily no "structural problem" rendering § 2255 "inadequate or ineffective" because he had one full round of review. *See, e.g.*, *id.*; *Chazen*, 938 F.3d at 856; *Montana*, 829 F.3d at 783. In addition, the general law of the case doctrine also bars reconsideration of the issues here. *See Fuller v. United States*, 398 F.3d 644, 648 (7th Cir. 2005) (holding the "law of the case" doctrine applies in the context of federal habeas petitions).

Higgs presented an identical *Brady* claim before the district court in his first § 2255 petition. There, he argued that the government violated *Brady* by failing "to disclose extensive information it had regarding its dealings with Gloria" in Maryland and that "the Government offered Gloria benefits in relation to state charges pending

against him," including "that state charges were never brought against Gloria for a homicide in Baltimore." *Higgs*, 711 F. Supp. 2d at 508.

Higgs now asserts that he has new evidence. But this does not matter, because the district court in his previous petition already held that the very evidence he now presents cannot advance his claim. While Higgs is correct that *part* of the reason he lost the *Brady* claim before was that he "had no hard evidence," Mot. at 21, that is only half the story. The district court found that, on the evidence he had, Higgs's *Brady* claim failed because he had not demonstrated any "causal connection" between Gloria's testimony and his treatment by Maryland. *Id.* at 508. But the court also found that *even assuming* the prosecution had failed to turn over the very evidence that Higgs claimed existed, Higgs still could not demonstrate that it was "material[]" under the *Brady* standard. *See id.* In other words, even if there was evidence that showed that Gloria received undisclosed consideration for his federal testimony, it would not have made a difference regarding Gloria's "already low credibility," and it would not satisfy the *Brady* standard of a "'reasonable probability' of a more favorable verdict." *Id.*

Moreover, the district court's consideration of what effect potential evidence might have was a necessary part of the holding. On a first § 2255 petition, a district court is required to hold a factfinding hearing unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Higgs requested an evidentiary hearing. *Higgs*, 711 F. Supp. 2d at 553. Thus, if the evidence Higgs wanted (and purports to now have) could have made a difference under *Brady*, the district court would have been obligated to develop it. But the court denied Higgs's request, finding that Higgs's claims "do not allege any facts which are 'either potentially credible or, if taken as true, would merit relief.'" *Higgs*, 711 F. Supp. 2d at 553. None of that evidence could matter to Higgs's claim.

There also need be no speculation whether the evidence he has now would have made a difference if he had it earlier. Higgs obtained the very same evidence he now presents in this case after his § 2255 petition and advanced it in his Rule 60 Motion. *See Higgs*, 193 F. Supp. 3d at 500-505. The court analyzed the evidence in detail, noted numerous problems the evidence posed for Higgs's *Brady* theories, and found that its earlier conclusions still held. *Higgs*, 193 F. Supp. 3d at 509-14.

Higgs vigorously disputes the merits of the decision on his *Brady* claim in his § 2255 petition.[3] Mot. 17-21.  Notably, his motion thoroughly mischaracterizes facts below, and his repeated assertion that "the Government actively intervened to protect Mr. Gloria from being prosecuted for murder," Mot. at 25, is baseless.[4]  Moreover, despite his claim that there was "no direct evidence that Mr. Higgs directed, desired, or intended for the women to be shot" Mot. at 6, the Fourth Circuit unequivocally found that there was "overwhelming evidence of Higgs's role in the murders."  Higgs, 663 F.3d at 742.

In any event, his disagreement with the earlier decision, no matter how strong, does not demonstrate a structural problem with § 2255 or entitle him to any further review.

---

[3]  Higgs's reference to an unrelated case involving an inadvertent *Brady* violation by a prosecutor who was not involved in this case at the time of the *Brady* violation that Higgs alleges, *see* Mot. at 4 n.2, is simply gratuitous.

[4]  Higgs claims the government "has never disputed that it . . . had multiple contacts on Mr. Gloria's behalf with the state authorities."  Mot. at 25.  This is patently wrong.  The government has never conceded that, and the Maryland district court that examined the very evidence Higgs now relies on found no credence to the allegation.  *See Higgs*, 193 F. Supp. 3d at 513 ("[T]here is no evidence in the record showing federal authorities requested, urged, or even knew of the alleged lenient treatment of Gloria by Baltimore authorities.").

### C. There Are No Other Structural Problems that Allow Higgs to Bring a § 2241 Petition

Even if Higgs's claim here were not barred for being fully litigated in earlier litigation, he still would not be eligible for savings clause relief. Higgs's savings clause arguments focus on what he believes to be the unique nature of a *Brady* claim relying on allegedly new evidence. But there is simply no structural problem with § 2255 that makes it an inadequate vehicle to raise such a claim—Higgs just cannot satisfy the high standard Congress has required a prisoner to meet. This court denied relief to a petitioner seeking a stay of execution on the theory that a *Brady* violation should qualify for the savings clause just last month, *see Bernard v. Watson*, No. 20-3379 (7th Cir. Dec. 10, 2020), and should do so again.

As the district court observed, far from being inadequate or ineffective to test a prisoner's claim under *Brady* based on previously unavailable evidence, "§ 2255 already provides petitioners an avenue for collateral relief based on newly discovered evidence." D. 21 at 7. To be sure, that provision imposes a high standard—that the evidence "would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty," 28 U.S.C.

§ 2255(h)(1)—which Higgs concedes he cannot meet. *See* Mot. at 26. But that does not mean that § 2255 is inadequate or ineffective to address such claims; it means that Congress intended courts to apply a demanding standard when addressing them. To allow prisoners like Higgs to avoid that congressionally imposed standard by resorting to § 2241 instead "would be to nullify the limitations on successive petitions," such that "the careful structure Congress has created to avoid repetitive filings would mean little or nothing." *Garza*, 253 F.3d at 921-22; *see also Unthank v. Jett*, 549 F.3d 534, 535 (7th Cir. 2008) (rejecting argument that the strict limits under § 2255(h) render § 2255 inadequate or ineffective, and concluding that "§ 2255 is inadequate or ineffective only when a prisoner is unable to present a claim of actual innocence").

Higgs makes much of the fact that it was the government's alleged misconduct that prevented him from obtaining the evidence and bringing his claims earlier. Mot. at 22-29. Again, Higgs is already bound by the decision that there was no *Brady* violation. But Higgs's allegations of misconduct, even if true, would not reveal any structural problem with § 2255. In *Purkey*, the prisoner similarly argued that his § 2255 motion omitted claims through no fault of his own, but because of ineffective

assistance by his § 2255 counsel. *Purkey*, 964 F.3d at 615.  This Court held that he could not satisfy the saving clause because nothing in § 2255 "formally prevented him from raising" those claims in a first § 2255 motion.  *Id.*  Whether Higgs was at fault is not relevant to the purely procedural question of whether something in § 2255 formally prevented him from raising the claim.

Higgs recognizes that there is no case establishing a path for his § 2241 claim through the savings clause, but he criticizes the court below for focusing too narrowly on the few paths already established in this Circuit.  Mot. at 22-24.  But his proposed remedy is simply to expand the narrow path in *Webster* until it is unrecognizable.

Prior to *Webster*, this Court had not allowed any savings clause claims based on newly discovered evidence.  *See Webster*, 784 F.3d at 1124.  The en banc court permitted the use of newly discovered evidence to challenge the constitutionality of a *sentence* through the savings clause where such sentence would otherwise not be subject to challenge under § 2255 at all (regardless of the strength of that evidence) because § 2255(h)(1) permits new evidence only to challenge conviction.  *See id.* at 1134-35, 38.  This Court concluded that Congress could not have

"contemplated" the problem of constitutional ineligibility for a death sentence when it adopted § 2255(h)'s limits because the Supreme Court had not yet held it unconstitutional to execute an intellectually disabled person or a minor. *Id.* at 1138. This Court therefore perceived a narrow "lacuna in the statute" warranting resort to the saving clause. *Id.* The analysis here is entirely different. As the district court noted, D. 21 at 8, when § 2255 was adopted, *Brady* had been the law for a long time. A *Brady* claim attacks the conviction, and § 2255 permits precisely such challenges. Higgs's claim is simply too weak to satisfy the standard that Congress established for them.

## II. Equitable Considerations Weigh Strongly Against a Stay of Execution

Higgs filed this claim a month before his scheduled execution despite having all of his "newly discovered" evidence for more than eight years. This unnecessary delay has undermined any arguments he has about the equities.

A stay of execution "is an equitable remedy, and equity must take into consideration the State's strong interest in proceeding with its judgment" and "attempts at manipulation." *Nelson*, 541 U.S. at 649 (citations and quotations omitted). There is a strong presumption

against granting a stay when a claim could have been brought with sufficient time to consider the merits without one. *Hill*, 547 U.S. at 584. The Supreme Court has repeatedly admonished that federal courts "can and should" reject "dilatory or speculative suits," *id.* at 585, and ensure that "[l]ast-minute stays [are] the extreme exception, not the norm," *Bucklew*, 139 S. Ct. at 1134.

Higgs's delay is entirely unreasonable. As the district court noted, "[t]he timing of this petition weighs against Mr. Higgs. He failed to bring his *Brady* . . . claim[] earlier, even though nearly all the *Brady* evidence was in his possession" by 2012. D. 21 at 11. Higgs defends his timing by arguing that he was awaiting the final outcome of his Rule 60(d) motion in 2018 and a FOIA suit in 2019. Mot. at 30. He does not explain why the pendency of those suits mattered if he is correct that the savings clause allows him to bring his *Brady* claim now. In any event, that brings him to 2019—not December 23, 2020, barely three weeks before the scheduled execution.

Such delay is all the more indefensible here, where Higgs seeks to invoke the saving clause to avoid the procedural safeguards Congress adopted in § 2255. Even if Higgs's evidence were *stronger*, such that he

could satisfy the demanding standard Congress enacted in § 2255(h)(1) that no reasonable jury would have found him guilty had they seen that evidence, Higgs would still have had to bring the claim within one year of when the evidence "could have been discovered through the exercise of due diligence." 28 U.S.C § 2255(f)(4). It cannot be that because Higgs's evidence is *weaker*, and cannot meet the standard for new-evidence claims in § 2255(h)(1), Higgs is entitled to instead sit on the evidence for eight years.

The Supreme Court has repeatedly emphasized that the public has a "powerful and legitimate in punishing the guilty," *Calderon v. Thompson*, 523 U.S. 538, 556 (1998) (citation omitted), and that "[b]oth the [government] and the victims of crime have an important interest in the timely enforcement of a [death] sentence," *Bucklew*, 139 S. Ct. at 1133. Given those interests, the Court has recently, and repeatedly, denied requests for last-minutes stays and vacated such stays when entered by lower courts. *See, e.g., United States v. Montgomery*, No. 20A125 (U.S. Jan. 12, 2021) (vacating stay); *Barr v. Hall*, No. 20A102, 2020 WL 6797719, at *1 (U.S. Nov. 19, 2020) (vacating stay); *Bourgeois v. Watson*, 141 S. Ct. 507 (2020) (denying stay); *United States v. Purkey*,

141 S. Ct. 195 (vacating stay); *Lee v. Watson*, 141 S. Ct. 195 (2020) (denying stay); *Dunn v. Price*, 139 S. Ct. 1312 (2019) (vacating stays). This Court should follow the Supreme Court's lead here, and—like the district court—deny Higgs's emergency application for a stay.

## CONCLUSION

For the reasons stated above, this Court should deny a stay of execution.

Respectfully submitted,

John C. Childress
Acting United States Attorney

/s/_____
Jeffrey A. Hall
Counsel to the Assistant Attorney
    General
Civil Division, Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
Tel: (202) 353-8679
Email: jeffrey.a.hall@usdoj.gov

/s/_____
Ellen E. Nazmy
Special Assistant United States
    Attorney
United States Attorney's Office
6500 Cherrywood Lane, Suite 200
Greenbelt, Maryland 20770
(301) 344-4433

January 15, 2021

# CERTIFICATE OF COMPLIANCE

1.  This motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 5,192 words, excluding the parts of the motion exempted by Fed. R. App. P. 32(f).

2.  This motion complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) & (a)(6) because it has been prepared in a proportionally spaced 14-point typeface using Microsoft Word for Office.

/s/

Jeffrey A. Hall
Counsel to the Assistant Attorney General

/s/

Ellen E. Nazmy
Special Assistant United States Attorney